UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN DAVID BATTAGLIA, | § § | |
| Petitioner, | § § | |
| v. | § § | NO. 3:16-CV-0687-B |
| WILLIAM STEPHENS, Director Texas Department of Criminal Justice, Correctional Institutions Division | § § § § | (Death Penalty Case) |
| Respondent. | § § | |

MEMORANDUM OPINION AND ORDER DENYING MOTIONS
TO APPOINT NEW COUNSEL AND STAY EXECUTION

On March 10, 2016, petitioner John David Battaglia ("Battaglia") filed an emergency motion to appoint counsel (doc. 1), a motion for stay of execution (doc. 2), and a motion for scheduling order (doc. 3). On March 11, this Court ordered responses to the motions to appoint counsel and for a stay of execution, and allowed time for a reply. (Order, doc. 5.) On that same day, attorney Margaret Schmucker filed her response ex parte and under seal. (Ex parte Response, doc. 6.) On March 15, responses were filed by the respondent William Stephens (Response, doc. 7) and attorney Michael Gross (Advisory, doc. 8). Battaglia has filed a reply (Reply, doc. 9) and a supplement to his motions (Supplement, doc. 10). Because Battaglia has representation under the statute and has not demonstrated a need to remove appointed counsel and substitute new counsel or grant a stay of his execution, the motions are **DENIED**.

I.

Battaglia seeks the appointment of Gregory W. Gardner of Washington, D.C., as new, substitute counsel and a stay of execution "to allow his counsel to meaningfully investigate the

factual bases for and prepare a habeas corpus application raising an Eighth Amendment claim that he is incompetent to be executed under *Ford v. Wainwright,* 477 U.S. 399 (1986), and *Panetti v. Quarterman,* 551 U.S. 930 (2007)." (Mot. for Stay, doc. 2, at 1.) He complains that the "state court deprived Mr. Battaglia of this process when it denied the appointment of counsel to investigate Mr. Battaglia's competency to be executed and, if necessary, file legal challenges based on his incompetence." (Mot. for Stay at 1.)

Respondent Stephens asserts that Battaglia does not present a cognizable federal claim, has not exhausted any *Ford* claim, has deliberately bypassed the state courts by not appealing the order denying counsel to the Texas Court of Criminal Appeals, and that any claim that he is incompetent to be executed is now procedurally barred by state law. (Resp. at 4, 7, 10–11.) Respondent also argues that any *Ford* claim would be meritless, that his prison health records indicate that Battaglia understands that he is to be executed and his execution is imminent, and that such records contain no indication that Battaglia is "mentally ill, delusional, divorced from reality, on psychiatric medication, or otherwise does not comprehend his imminent execution." (Resp. at 14–15.) Respondent argues that, although Battaglia claims that he does not understand the reason for his execution, "he presents no proof of this contention other than his self-serving and unsupported allegations." (Resp. at 15.)

## II.

Battaglia's request for a stay is premised upon his need for appointed counsel. As a threshold matter, this Court ordered responses to clarify whether Battaglia already has appointed counsel and whether there is any need to remove existing counsel and appoint different counsel for the purpose of filing any needed future claim. (Order, doc. 5.) The Court finds that Battaglia already has

2

federally appointed counsel and has not shown a need to replace counsel.

### A.

Pursuant to 18 U.S.C. § 3599, this Court previously appointed attorney Margaret Schmucker. "Order Modifying Prior Order and Conditionally Appointing Counsel," doc. 4, *Battaglia v. Thaler,* No. 3:09-CV-01904-B (N.D. Tex., Nov. 16, 2009).[1] On appeal from the denial of habeas relief, the United States Court of Appeals for the Fifth Circuit granted the motion of appointed counsel Margaret Schmucker to withdraw, Order, doc. 00512554586, *Battaglia v. Stephens*, No. 13-70035 (5th Cir. Mar. 10, 2014), and, at Battaglia's request, appointed new counsel, attorney Michael C. Gross. Order, doc. 00512581032, *Battaglia v. Stephens*, No. 13-70035 (5th Cir. Apr. 1, 2014). On Battaglia's behalf, Gross filed an application for certificate of appealability in the Court of Appeals, which was denied, *Battaglia v. Stephens,* 621 F. App'x 781, 782 (5th Cir. 2015) (per curiam), and a petition for a writ of certiorari, which was also denied, *Battaglia v. Stephens,* 136 S. Ct. 803 (Jan. 11, 2016). Subsequently, Gross "timely filed a clemency petition with the Texas Board of Pardons and Paroles." (Adv. at 3.)

### B.

Attorney Gross asserts in his advisory to the Court that he believes that he "is no longer current appointed counsel for Mr. Battaglia under § 3599." (Adv. at 5.) He bases this on the arguments that counsel appointed under § 3599 are not required to represent the death row inmates

---

[1] Although the order appointing counsel also appointed Karyl Krug as co-counsel, she has apparently never actually represented Battaglia. "She did not do any work on the case, her name does not appear on any pleading, and she did not request any compensation. Nor did she appear in the Fifth Circuit. Thus, Ms. Krug's appointment should be considered terminated, notwithstanding that she did not ever formally withdraw." (Mot. to Appt. Counsel, doc. 1, at 2 n.1.)

3

in state competency proceedings[2] (Adv. at 1–2), that the Court of Appeals' "order substituting counsel made no reference to 18 U.S.C. § 3599,"[3] (Adv. at 2), and that disparaging correspondence Battaglia sent to Gross prompted him to file a motion to withdraw, which was denied.[4] (Adv. at 3–4.)

This position does not comply with the language of the appointment statute, which provides in part:

> *Unless replaced* by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, *each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings*, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

18 U.S.C. § 3599(e)(emphasis added). Because Battaglia has not shown that a court of competent jurisdiction over his federal appointment replaced Gross, such counsel's representation continues under the same statute currently relied upon by Battaglia in requesting the appointment of counsel. Therefore, Battaglia already has the representation required under this statute.

---

[2] This assertion neither impacts his status as appointed counsel under § 3599, nor supports the need to appoint new counsel under that section. If such counsel are not required to represent the death row inmates in state competency proceedings, the appointment of substitute counsel under this same section would afford Battaglia no greater protection in such proceedings, and Gross's decision to not pursue such legal action would be irrelevant to the issue of whether he remains the appointed counsel under that section.

[3] If the Court of Appeals intended to appoint counsel under some other provision than § 3599, it is not apparent to this Court, nor has any been suggested by Battaglia. To the extent that Battaglia argues for any other legal authority to support his appointment, that would be a matter for the Court of Appeals to determine.

[4] The denial of Gross's motion to withdraw supports the conclusion that he remains the appointed counsel.

This conclusion appears to have been apparent both to attorney Gardner and Gross when the motions were filed.[5] In his emergency motion to appoint counsel, Gardner stated that "Mr. Gross signed an affidavit consenting to a substitution of counsel" and that the appointment of Gardner "in lieu of Mr. Gross at this juncture will not disserve judicial economy." (Mot. to Appt. Counsel at 4.) Accordingly, Gross filed his advisory in response to this Court's order not merely as an interested person, but as Battaglia's counsel. (Adv. at 1, 5.) Further, Gross prepared and timely filed Battaglia's clemency petition. (Adv. at 3.) These actions indicate his belief that he is the attorney representing Battaglia under § 3599. Further, although he did not file a competency challenge, he apparently arranged[6] for counsel to assist Battaglia in pursuing a competency challenge, resulting in the pleadings that are now before this Court, which include Gross's affidavit, dated February 9, 2016, in which he acknowledges his appointment and confirms "that I consent to Greg Gardner substituting as counsel of record in any state or federal matter regarding Mr. Battaglia." (Mot. to Appt. Counsel, doc. 1, Ex. 2.) Unless he believed that he was the current appointed counsel with authority to consent to substitution in Battaglia's representation, such a statement would have no meaning or purpose.

---

[5] Gardner has subsequently emphasized the Gross's statement in his advisory that he does not believe he is the current appointed counsel in support of the assertion that Battaglia has no counsel. (Reply at 2, 4.) This assertion is incorrect.

[6] On this point, there is some potential confusion in the filings. Gross states that he first contacted the state trial court to see if they would appoint counsel and, when he did not hear back, he contacted Gardner to assist Battaglia in pursuing the potential *Ford* claim. (Adv. at 4–5.) Gardner states that "Battaglia contacted undersigned counsel and asked him for representation," suggesting that Battaglia contacted him directly. (Mot. to Appt. Counsel at 3.) These two statements may be easily reconciled, however, if Gross was acting on Battaglia's behalf in contacting Gardner.

5

## C.

The Court finds that attorney Schmucker was "replaced" by the United States Court of Appeals for the Fifth Circuit when it appointed attorney Gross. Accordingly, Michael C. Gross is the current attorney of record for Battaglia appointed under 18 U.S.C. § 3599.

## III.

The Court turns to the question of whether current appointed counsel should be removed and replaced with new counsel. The appropriate standard governing motions to substitute counsel under § 3599 is the "interest of justice" standard set forth in *Martel v. Clair,* 132 S. Ct. 1276, 1287 (2012). Factors to be considered include "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint." *Id.,* 132 S. Ct. at 1287.

## A.

Battaglia's motions are filed in this Court less than twenty days before his scheduled execution date. As previously observed, "[p]rotecting against abusive delay is an interest of justice" that must be considered in ruling on any motion to substitute counsel. *Martel,* 132 S. Ct. at 1286. To the extent that the removal of Gross as appointed counsel would result in a delay in the scheduled execution, this factor weighs heavily against substitution.

## B.

This Court has ordered responses from all previously appointed counsel and the Respondent, and has afforded Battaglia an opportunity to reply. (Order, doc. 5.) The needed responses and reply have been received and have provided the Court with adequate information to decide whether to grant a substitution of counsel. Therefore, no further inquiry is necessary at this time.

6

## C.

Before this Court, Battaglia asserts no complaint against his current appointed counsel Gross. Even so, it is apparent that Battaglia has been harshly critical of every prior attorney that has represented him in these proceeding, frequently resulting in the attorney's desire to withdraw, as indicated by the multiple motions to withdraw that Battaglia's prior attorneys have filed. The fact that Battaglia may now express similar complaints in his communications with current appointed counsel is neither surprising nor sufficient cause to remove appointed counsel and cause a disruption that may result in the need to stay his scheduled execution. And the indication in Battaglia's motion that both he and his attorney would prefer the substitution similarly does not provide sufficient cause to remove current appointed counsel, particularly on the eve of his scheduled execution.[7] Instead, Battaglia appears to be seeking new counsel as a means to obtain a stay rather than as a result of any legitimate problem with his attorney. Battaglia has also not shown that the addition, rather than substitution, of counsel would not have been fully adequate to protect his rights without a stay of his execution.

Appointed counsel has indicated concerns with the resources available for him to review materials offered to him or otherwise to pursue or investigate any legal avenue that may be available to Battaglia.[8] (Adv. at 4–5; Mot. to Appt. Counsel at 4.) As counsel appointed under § 3599, he

---

[7] The assertion of this allegation in Battaglia's motion is somewhat troubling. Battaglia alleges that he "now believes that Mr. Gross is part of the conspiracies against him. Understandably, Mr. Gross and Mr. Battaglia no longer want Mr. Gross to work on Mr. Battaglia's case. Mr. Battaglia contacted undersigned counsel and asked him for representation." (Mot. to Appt. Counsel at 3.) The juxtaposition of these two statements suggests that Battaglia contacted Gardner directly because he no longer wanted Gross to represent him. Gross's advisory, however, reveals that it was he, and not Battaglia, who contacted Gardner.

[8] Appointed counsel expressed concern about the fact that the prosecution had apparently opened its trial file once an execution was sought, connecting this with a potential competency challenge rather than

7

would, of course, be entitled to compensation and to apply for reasonable and necessary investigative or expert assistance. In fact, Gardner seeks the investigative assistance that would result from the proposed substitution. Therefore, an attorney's available resources should not be a deciding issue in ruling on a motion to substitute counsel.

In short, Battaglia has not asserted any valid complaint against current appointed counsel or shown that the removal and substitution of counsel is necessary at this late date. This factor also weighs against substitution. Because the relevant factors weigh against substitution, Battaglia's motion to substitute counsel should be denied.

## IV.

Having determined that Battaglia already has counsel appointed under § 3599 and that such counsel should not be removed and substituted with new counsel, the Court turns to the question of whether Battaglia has made the showing necessary to obtain a stay of his scheduled execution.

## A.

Battaglia relies on this Court's jurisdiction when appointing counsel "to stay a capital prisoner's execution in advance of the filing of an application for a writ of habeas corpus." (Mot. for Stay at 3.) Such jurisdiction is limited, however, to a Court "before whom a habeas corpus

---

any other needed action, such as the clemency application that he filed. (Adv. at 4–5.) Counsel also asserts that he contacted the state trial court for assistance rather than a federal court having jurisdiction over his appointment. He also complained to Gardner that he "could not afford" the time and expense needed to review the prosecutor's file but, again, has not requested funding or additional appointments to conduct any necessary investigation. He does not claim to have ever sought funding for investigative or expert assistance in connection with any potential competency challenge. The reason appears obvious. Battaglia has been repeatedly examined for mental issues and has never been found incompetent. Findings, Conclusions and Recommendation, doc. 76, at 3–4, *Battaglia v. Stephens*, No. 3:09-CV-1904-B-BN (N.D. Tex., Aug. 19, 2013). Based on the assertions of Respondent, it appears likely that counsel knew that nothing in the prosecutor's file would support a finding of incompetency to be executed. (Resp. at 19–20.)

proceeding" may be considered "pending." 28 U.S.C. § 2251(a)(1). In this case, however, the prior habeas proceedings are concluded, an appeal was taken, and the appellate mandate has issued. Therefore, those habeas proceeding are no longer pending in this Court.

The pleadings filed by Battaglia do not appear to constitute a habeas petition challenging his competency to be executed under *Ford* and *Panetti*. In fact, Battaglia emphasizes that he is not presently making any habeas challenge, but merely seeking to substitute counsel in connection with a possible future challenge. "Mr. Battaglia is not seeking to adjudicate a *Ford* claim on its merits." (Reply at 1.) "Mr. Battaglia again emphasizes that he does not seek appellate review of any state-court action or to adjudicate a *Ford* claim with his motions." (Reply at 3.)

As observed by the United States Court of Appeals for the Fifth Circuit,

> [W]hen the habeas petition has been ruled on, the appellate mandate has issued, and the case is no longer before the court, "the only reasonable analysis is that the habeas petition is no longer pending before the district court, and the court therefore lacks jurisdiction to enter a stay under the clear terms of the statute."

*Howard v. Dretke,* 157 F. App'x 667, 671 (5th Cir. 2005) (quoting *Williams v. Cain,* 143 F.3d 949, 950 (5th Cir.1998) (concluding that when a petitioner seeks a stay of execution pending the disposition of a writ of certiorari, "he should seek that stay in the Supreme Court itself")). The Court finds that it lacks jurisdiction to enter a stay of execution under § 2251 because no habeas proceedings are currently pending in this Court.

**B.**

In the alternative, even if a habeas petition may be considered "pending," this Court must still act within its discretion.

> "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken v. Holder,* 556 U.S. 418, 433–34

9

> [](2009) (citations omitted). In deciding whether to grant a stay of execution, the district court was required to consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 [](quoting *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L.Ed.2d 724 (1987)).

*Green v. Thaler,* 699 F.3d 404, 411 (5th Cir. 2012), as revised (Oct. 31, 2012). This Court must also consider the timing of a motion for stay of execution.

> A court considering a stay must also apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson* [*v. Campbell,* 541 U.S. 637, 650 (2004)][]. *See also Gomez v. United States Dist. Court for Northern Dist. of Cal.,* 503 U.S. 653, 654, 112 S. Ct. 1652, 118 L.Ed.2d 293 (1992) (per curiam) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay).

*Hill v. McDonough,* 547 U.S. 573, 584 (2006).

    1.    <u>Likelihood of Success</u>

In addressing this factor, the Court of Appeals has instructed that,

> While "the movant need not *always* show a 'probability' of success on the merits," he must "present a substantial case on the merits when a serious legal question is involved and show that ***the balance of the equities,*** [i.e. the other three factors] ***weighs heavily in the favor of granting the stay***."

*O'Bryan v. McKaskle,* 729 F.2d 991, 993 (5th Cir. 1984) (quoting *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981)).

Battaglia has not shown that he is likely to succeed on the merits. First, he faces significant procedural obstacles. He has not exhausted any competency challenge in state court, but only sought the appointment of counsel. When that motion was denied, he did not exhaust any claim arising from its denial by appealing it to the Court of Criminal Appeals. Instead, he filed the instant

10

motions before this Court. Respondent asserts that this deliberately bypassed the state courts, thereby depriving the highest state court the opportunity to rectify any problem while there was still time to do so. (Resp. at 3,9-11.) Respondent appears to be correct. Battaglia has not identified any exhausted claim that is cognizable in federal court that may be the subject of a future habeas action. Therefore, he has not shown a likelihood that any future habeas action would reach the merits of a cognizable claim.

Assuming that these procedural obstacles can be overcome, Battaglia does not present a valid basis for relief. He relies on the fact that the state court did not appoint new counsel and that the proposed new counsel "has not yet had a meaningful opportunity to investigate and prepare a federal habeas corpus application" on Battaglia's behalf. (Mot. for Stay at 4.) As previously noted, however, Battaglia has had federally appointed counsel since 2009 under the same provision that is relied upon to appoint counsel now. (Order, doc. 5, at 2.) Further, the trial court's order setting execution was signed on December 16, 2015, and the prosecutor's office has been in contact with appointed counsel and has opened its file. (Adv. at 4; Resp. at 19–20.) The unpreparedness of proposed new counsel should not form the basis for a stay of execution when the inmate has had competent counsel continually since well before the state court set any execution date.

Battaglia's allegations fail to show that a claim of his incompetence to be executed would likely have merit. He asserts that the record before this Court makes a substantial preliminary showing that his delusions so impair his concept of reality that he cannot reach a rational understanding of the reason for the execution. (Mot. for Stay at 6.) Respondent counters by challenging whether Battaglia's assertions are actually supported by the cited records, and argues that Battaglia has misstated the record in arguing this preliminary showing. (Resp. at 16–19.)

11

Battaglia's reply does not attempt to rebut Respondent's corrections, but argues that any consideration of Respondent's statements would require an evidentiary hearing. (Reply at 6.) This Court has reviewed each of the cited records and generally agrees with Respondent's reading of those records.

Battaglia refers to the mental health experts that evaluated him and testified at his trial in support of his motion. (Mot. for Stay at 7–8.) Despite the fact that the experts were obtained to evaluate Battaglia's sanity and competency, none of them opined that he was insane at the time of the offense or incompetent to stand trial. In fact, all three of the defense experts agreed that Battaglia knew what he was doing at the time of the murders. *See Battaglia v. State,* No. AP-74,348, 2005 WL 1208949, at *3–4 (Tex. Crim. App. May 18, 2005); 53 Reporter's Record ("RR") 122–123; 54 RR 58, 62; 55 RR 73–75. And some experts affirmatively testified that he was sane and/or competent. (53 RR 177; 54 RR 28, 58.)

Battaglia also argues that his own attempts to raise legal claims and lay blame on others shows that he does not understand his moral culpability in the murders. He argues that his pro se motion to appoint counsel demonstrates his belief that his daughters were murdered because they were experiments in a cult. (Mot. for Stay at 8–9.) The cited pro se filing, however, does not make that connection to the murders, but merely claims that certain evidence was withheld from him, in part, because of the influence of such a cult, and he asks for an attorney that would be free from such influence. Pro se motion, doc. 2, at 1–2, *Battaglia v. Stephens,* No. 3:09-CV-1904-B-BN (N.D. Tex., Oct. 26, 2009). Battaglia also claims that pro se documents he filed in 2009 and 2010 show his believe that the Internal Revenue Service "orchestrated the murder of his daughters" to frame him, or that such documents show his belief that his former wife murdered the children. (Mot. for Stay

12

at 9.) Respondent's analysis reveals that no specific role was attributed to the IRS in these pro se filings, which also did not say that his former spouse murdered their children. (Resp. at 16–17.) Similarly, Battaglia continues to cite pro se filings from years before his execution was set, containing various accusations against his former spouses, former lawyers, judges, law-enforcement officers, and others, to argue that these filings support the conclusion that he does not understand the reason he is to be executed. He also references certain self-reported hallucinations that are "moderately connected with his case." (Mot. for Stay at 11.) Respondent adequately rebuts each of Battaglia's assertions regarding the pro se filings and explains that, even if they accurately portray Battaglia's current state of mind, they would not reflect delusions that would so impair Battaglia's concept of reality that he could not reach a rational understanding of the reason for the execution. (Resp. at 16–19.) Battaglia's allegations do not show that such self-serving filings are anything other than attempts to avoid responsibility or make what he perceives to be advantageous legal positions.

These pro se filings do, however, support the prosecution theory that his vindictive hatred of his second former wife powerfully motivated these murders, and that he constantly tries to shift the blame to her and others. (52 RR 19–20; 56 RR 15, 17–18, 26–28, 62–72.) Most of his pro se filings attempt to discredit the validity of the conviction and death sentence by attacking the integrity of those proceedings. Even so, they reveal an awareness that his eventual execution is to be based on that conviction and death sentence.[9] Persistent attempts to avoid responsibility and blame others for a horrible crime may make him appear to be out of touch with ordinary human sensibilities, but it does not make him incompetent to be executed.

---

[9] Even appointed counsel's advisory indicates Battaglia's awareness that his execution will follow the conclusion of the habeas proceedings that counsel was appointed to pursue. (Adv. at 3-4.)

13

> The mental state requisite for competence to suffer capital punishment neither presumes nor requires a person who would be considered "normal," or even "rational," in a layperson's understanding of those terms. Someone who is condemned to death for an atrocious murder may be so callous as to be unrepentant; so self-centered and devoid of compassion as to lack all sense of guilt; so adept in transferring blame to others as to be considered, at least in the colloquial sense, to be out of touch with reality.

*Panetti*, 551 U.S. at 959-60. Such character traits may be difficult to understand, but they do not show incompetence to be executed. Although Battaglia's pro se filings argue that his state court conviction and death sentence were wrongly obtained, these filings consistently reveal his awareness that, whether rightly or wrongly, the state court convicted him and sentenced him to death for the murder of his daughters, and that unless some legal relief is granted, the enforcement of that sentence will result in his execution. This tends to show that he could not succeed on the merits of his incompetency-to-be-executed claim.

After the deadline for filing his reply, and shortly before this order was issued, Battaglia filed a supplement to his motions for appointment of counsel and for a stay of execution. (Supp., doc. 10.) In this supplement, he references an email sent by the state prosecutor's office that includes statements Battaglia made to representatives of the Texas Board of Pardons and Paroles. These statements include some of the same kinds of accusations against his former wife and others reflected in the pro se filings, except for one. In the first statement listed, Battaglia appears willing to accept at least some responsibility for the murders.

> In discussing the offense, Battaglia apparently wavered between saying that he didn't murder the [victims] and saying, "Who else could have done it[;] there's no one else to blame." He claimed that he did not know why or what happened, but apologized and said that he must have caused it.

(Supp. at 1-2.) This may or may not rise to the kind of remorse that members of the parole board

14

were seeking, but that is not for this Court to decide. It does reflect, however, some awareness that he is facing punishment for the murder of these victims and a willingness to accept at least some responsibility for this crime. It does not support the argument that his delusions so impair his concept of reality that he cannot reach a rational understanding of the reason for the execution.

The Court finds that Battaglia has not, either before the state court or before this Court, made a "substantial showing of incompetency" under *Ford,* 477 U.S. at 426, and *Panetti,* 551 U.S. at 948, sufficient to require a hearing of his claimed incompetence to be executed. Even if he were able to overcome the significant procedural obstacles, the evidence and records relied upon do not support the claim that Battaglia is incompetent to be executed, nor do they show a likelihood that he will ever succeed on the merits of such claim. Although Battaglia presents evidence indicating mental illness, he does not present a substantial case on the merits of a challenge to his *competence* to be executed. This factor weighs against granting a stay of execution.

    2.    <u>Irreparable Injury</u>

The nature of an execution would normally weigh this factor in favor of granting a stay.

> In a capital case, the possibility of irreparable injury weighs heavily in the movant's favor. The irreversible nature of the death penalty must be weighed against the fact that "(t)here must come a time, even when so irreversible a penalty as that of death has been imposed upon a particular defendant, that the legal issues in the case have been sufficiently litigated and relitigated so that the law must be allowed to run its course . . . ." *Evans v. Bennett,* 440 U.S. 1301, 1303, 1306 [] (1979) (Rehnquist, J., granting a stay of execution). In a capital case, we must be particularly certain that the legal issues "have been sufficiently litigated," and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States. *See Shaw v. Martin,* 613 F.2d 487, 491 (4th Cir. 1980).

*O'Bryan v. Estelle,* 691 F.2d 706, 708 (5th Cir. 1982). In this case, however, this factor appears similar to the first in that "the merits of [the inmate's] case are essential to [the federal court's]

15

determination of whether he will suffer irreparable harm if a stay does not issue." *Walker v. Epps,* 287 F. App'x 371, 375 (5th Cir. 2008).

While it is certain that Battaglia's execution will permanently end his ability to raise further claims, it does not appear that he has any. Because he has not shown that there is a cognizable federal claim available to him, Battaglia has not shown a need to appoint any new counsel or to stay his execution. It appears that he has been afforded every opportunity to raise, through appointed counsel and pro se, any claim that he desired, regardless of its lack of merit. All of his prior claims have been sufficiently litigated, and he has failed to identify a potentially meritorious claim that remains. Under these circumstances, this factor does not weigh in favor of a stay of execution.

    3.    <u>Other Parties' Interests</u>

This factor also weighs against granting a stay. The Supreme Court has instructed that "a stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill,* 547 U.S. at 584 (citing *Nelson,* 541 U.S. at 649–50). Battaglia has identified no other parties interested in granting the stay. His two daughters are dead, victims of the murder for which he has been convicted and sentenced to death. At trial the prosecutor identified the continuing interests of two others in arguing that there was no reason to not give Battaglia the death penalty.

> There's absolutely nothing mitigating about what he did to these girls. About what he's done to [his first ex-wife]. About what he's done to [his second ex-wife]. Nothing. There's nothing mitigating about the prospect of hi[m] haunting these women from the penitentiary as long as he's alive.

(56 RR 72.) The pro se records referenced in Battaglia's motion confirm that he has continued to

haunt these victims. These documents reflect his relentless effort to malign his ex-wives and others from death row. To the extent that their interests should also be considered, they also weigh against granting a stay.

4.     The Public Interest

The public interest also appears to abide with the equities. If an inmate shows the likelihood of success on the merits, then public interest would be served by granting a stay. *See In re Campbell,* 750 F.3d 523, 534 (5th Cir. 2014). If not, then a stay of execution would not appear to advance any public interest. *McCoy v. Lynaugh,* 714 F. Supp. 241, 252 (S.D. Tex. 1989). The public would appear to have an interest in enforcing a valid convictions and sentences. Battaglia's motion does not suggest any defect in the validity of the conviction or death sentence, only whether he is incompetent for such sentenced to be enforced. While the public would also appear to have an interest in preventing the execution of those who are incompetent to be executed, Battaglia has not made a substantial threshold showing of incompetence to be executed. Therefore, this factor also weighs against granting the stay.

5.     Timing

The timing of the motion is particularly troubling. Battaglia relies upon expert testimony from his trial in 2002, and on pro se filings and correspondence known to counsel during the pendency of habeas proceedings, dating back to 2009. To the extent that these are relied upon to show any issues with his competency, they also show that his appointed counsel knew or should have known of such issues well before an execution was scheduled.[10]

---

[10] Both of Battaglia's appointed counsel indicate knowledge of a potential challenge to his competence to be executed. Prior appointed counsel voiced concerns to Gardner. (Mot. for Stay at 8.) Current

Respondent asserts that Battaglia has no cognizable claim in this Court because he deliberately chose to not file a competency challenge in state court and to not appeal the state district court's denial of his motion to appoint counsel, thereby depriving the highest state court the opportunity to rectify any problem while there was still time to do so. (Resp. at 3, 9–11.) Regardless of whether Battaglia has exhausted any claim that he may wish to bring before this Court, however, he could certainly have presented the present motion to stay his execution earlier. The timing of this motion fewer than 20 days before an execution, particularly when the asserted bases for such motion were known to his appointed counsel so far in advance, creates a strong equitable presumption against the granting of a stay.

V.

Battaglia has been appointed counsel under 18 U.S.C. § 3599 and has not provided any sufficient reason to warrant the removal of such counsel and substitution with new counsel. Therefore, his motion for appointment of substitute counsel should be denied. Battaglia has not

---

appointed counsel's advisory also expresses that he had concerns about Battaglia's mental condition while his federal habeas appeals were still underway and well before the trial court scheduled an execution.

> While the COA application was pending with the Fifth Circuit Court of Appeals, Mr. Battaglia sent to undersigned counsel numerous correspondence. After reading this numerous correspondence, it became apparent to counsel that Mr. Battaglia suffers from a severe mental disease given the flight of thoughts exhibited in the correspondence. The correspondence was similar to the correspondence undersigned counsel would receive from Scott Panetti, another death row inmate, whom counsel previously represented and who later received relief regarding competency-to-be-executed.

(Adv. at 3.) This also indicates that appointed counsel was well equipped to handle any competency-to-be-executed claim that needed to be raised, having represented Panetti in similar proceedings. The fact that appointed counsel filed the clemency petition but did not even seek investigative, expert or other assistance to pursue a challenge to his competency does not suggest, however, that he believed a competency challenge would prevail.

initiated a new habeas proceeding before this court to create the jurisdiction needed to grant a stay upon the appointment of counsel, but even if he had, he has not shown that this Court should exercise its discretion to stay his scheduled execution. Therefore, his motion for a stay should be denied. Because his motion for a scheduling order depends upon this Court granting a stay of his execution, it should be denied as moot.

Petitioner John David Battaglia's emergency motion to appoint counsel (doc. 1), for a stay of execution (doc. 2), and for a scheduling order (doc. 3) are **DENIED**.

**IT IS SO ORDERED** this 18th day of March, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE